**IN THE COURT OF APPEALS OF IOWA**

No. 21-1097
Filed October 20, 2021

**IN THE INTEREST OF J.O.,**
**Minor Child,**

**D.O., Father,**
        Appellant,

**N.P., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Cerro Gordo County, Adam D.

Sauer, District Associate Judge.


        A mother and father separately appeal the termination of their parental

rights. **MOTHER'S APPEAL AFFIRMED; FATHER'S APPEAL REVERSED AND**

**REMANDED.**


        Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for

appellant father.

        Jane M. Wright, Forest City, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        David A. Grooters, Mason City, attorney and guardian ad litem for minor

child.

        Considered by Tabor, P.J., and Greer and Badding, JJ.

**TABOR, Presiding Judge.**

Three-year-old J.O. is the son of Nichole and David. The parents separately appeal the termination of their parental rights. Both allege that severing their legal relationship with their son is not in his best interests. And they ask us to reverse the juvenile court's order, claiming J.O. is in the legal custody of his maternal grandmother. In the alternative, both parents ask for six more months to achieve reunification. Nichole also asks us to consider placing J.O. in a guardianship with her mother.

After a full review of the record, we reach a different result for each parent.[1] We affirm the termination of Nichole's rights. But we find delaying permanency for six months would provide enough time for David to meet expected behavioral changes that would eliminate the need for J.O.'s removal, so we reverse and remand as to David only.

### I.    Facts and Prior Proceedings

Nichole's methamphetamine use prompted the Department of Human Services (DHS) to remove J.O., then two years old, from her care in September 2020. After removal from Nichole's care, J.O. lived with his maternal grandmother in Mason City—where he remained during the child-in-need-of-assistance (CINA) case. Nichole was also living in Mason City. But David had moved from Mason City to East Moline, Illinois.

---

[1] We review termination of parental rights de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We review the facts and the law and 'adjudicate rights anew.'" *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021) (citation omitted). We give respectful consideration to the factual findings of the juvenile court, but they do not predetermine our result. *W.M.*, 957 N.W.2d at 305.

The juvenile court adjudicated J.O. as a CINA in November 2020. By then, Nichole had started substance-abuse treatment. As for David, during the first family team meeting, he shared a history of substance abuse but reported not using methamphetamine since separating from Nichole. He acknowledged marijuana use in the past month. The CINA order stated: "David wants to be involved in the case but lives in Illinois. David needs to maintain contact with providers." In a December dispositional order, the court directed David to obtain a substance-abuse evaluation.

The parents' endeavors at reunification got off to a slow start. Nichole was inconsistent in her interactions with J.O. Likewise, David did not maximize his opportunities to have telephone and video contact with J.O., though his consistency increased by mid-December. That month, a report from the Court Appointed Special Advocate (CASA) documented the parents' minimal progress. The CASA noted that Nichole was sometimes distracted during visits with J.O. And the grandmother revealed that Nichole had been stopping by to see J.O. less often. David told the CASA in a phone call that he missed J.O., but it was hard for him to travel to Mason City because he had a new baby in Illinois. David also said he was "scared to travel right now due to COVID" but had been trying to videoconference more often with J.O. He had paid some monthly child support to Nichole, though he remained behind. And he sent the child gifts for his birthday and Christmas.

The parents' efforts remained lackluster in early 2021. By February, Nichole stopped participating in substance-abuse treatment, telling service providers she did not believe she had a problem with methamphetamine. And Nichole's visits

with J.O. were inconsistent, despite his placement with her mother.  In the same time frame, David fell out of touch with the DHS and service providers.

But David did maintain contact with his son through the maternal grandmother.  Yet despite the open lines of communication between David and the maternal grandmother, David had only three in-person visits with J.O. during the CINA case.  Still, though small in number, the visits were high quality.  The DHS caseworker confirmed J.O. enjoyed his time with David.  "When David comes, he is very engaging with [J.O.], interacts with him, gets down on his level, plays with him, usually like he indicated for Father's Day he brought him a gift."

In May 2021, the State petitioned for termination of the parents' rights, citing Iowa Code section 232.116(1) (2021), paragraphs (e) and (h).  At a trial in July, the juvenile court heard from both parents, as well as the caseworkers.

Nichole acknowledged struggling with depression since her teens, but did not believe that it prevented her from fully participating in the CINA case.  She was unemployed, which she attributed to the pandemic.  Adding to her instability, she was far behind on her rent payments.  Nichole also discussed her history of unhealthy relationships.  Plus, she had pending criminal charges in Minnesota for possession of methamphetamine and marijuana.  She admitted using methamphetamine about one month before the termination trial.  Despite those circumstances, she testified she did not need substance-abuse treatment.

David testified that he had steady employment and paid child support for J.O.  David also had stable housing, renting a home with his retired uncle.  He had a valid driver's license, but his car had recently been totaled—which was one reason it was hard to get to Mason City to visit J.O.  He also testified he worked

long hours but recently cut back to make time to visit with his younger son, who lived in Illinois. David testified that he usually calls J.O. before he has those weekly visits with his other son. He described a positive relationship with the maternal grandmother, as well as "great" visits with J.O. "[H]e runs up to me, gives me a hug, you know, he knows who I am. So, it hurts when I got to leave him." That said, David acknowledged he would need more time to prepare to be a full-time father to J.O.

The DHS caseworker recommended the court terminate Nichole's parental rights because she "does not take ownership for her actions or her instability." The caseworker also recommended terminating David's parental rights because his focus was on his younger child, relegating J.O. to "the back burner."

In its August order, the court granted the State's petition on both statutory grounds. The parents each appeal, but neither challenges the sufficiency of the State's proof under Iowa Code section 232.116(1).

## II. Analysis

### A. Nichole's Appeal

Even when the State proves one or more grounds for termination, the juvenile court may decline to sever the parent-child relationship if that severance is not in the child's best interests under section 232.116(2) or a permissive factor in section 232.116(3) compels preservation of parental rights. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (describing three-step analysis of termination cases). Nichole conflates those two steps, but basically she argues the court should not have terminated her rights because (1) ending the parent-child

relationship threatened J.O.'s long-term mental and emotional health because of their close bond and (2) he was in the legal custody of the maternal grandmother.

On the best-interests challenge, courts must give "primary consideration to the child's safety," to the best placement for furthering his long-term nurturing and growth, and to his physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (discussing section 232.116(2)). Here, because Nichole denies her substance-abuse problem, she cannot provide J.O. with a safe home. Her inability to keep a consistent visitation schedule, even when her child lives with her mom in the same town, also bodes poorly for meeting J.O.'s long-term physical and emotional needs.

On the permissive factors weighing against termination, Nichole has not proved the closeness of her relationship with J.O. or his placement with the maternal grandmother require preservation of her parental rights. *See A.S.*, 906 N.W.2d at 476–77 (holding parent resisting termination has burden to prove factors under section 232.116(3)). Nichole argues J.O. is "happy every time he sees [her] and he also wanted to leave with [her] every time." But the grandmother reported that J.O.'s relationship with Nichole had been deteriorating and when she missed visits, he "rarely asked for his mother anymore." So Nichole did not offer clear and convincing evidence that the termination would be detrimental to J.O. because of the closeness of their relationship. *See* Iowa Code § 232.116(3)(c).

We also do not believe that placement with the grandmother dictated a different outcome. Section 232.116(3)(a) comes into play only when a relative has "legal custody." *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021). It does not apply when, as here, the DHS has legal custody and a maternal grandparent is

caring for the child. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Even if the maternal grandmother had legal custody, Nichole has not shown that circumstance weighed against the sound reasons for terminating her parental rights.

On a related note, Nichole contends the court could ensure J.O.'s safety and well-being by creating a guardianship with the grandmother. His young age and the grandmother's objection to the uncertainty of that arrangement weigh against creating a guardianship for J.O. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (reiterating guardianship is not legally preferred alternative to termination of parental rights).

Finally, we reject Nichole's request for six more months to work toward reunification. Under section 232.117(5), the juvenile court may order an extension of permanency for up to six months under section 232.104(2)(b) as an alternative to terminating parental rights. *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June 3, 2020). Such an extension is appropriate if the juvenile court can point to "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after that time. Iowa Code § 232.104(2)(b). Nichole's situation did not suggest an extension of six months would resolve her serious parenting deficiencies. She did not see the need for substance-abuse treatment and used methamphetamine about a month before the termination trial. This record supports the juvenile court's decision to terminate her parental rights.

### B.    David's Appeal

At trial, David also asked for more time to work toward reunification. Making the case for that extension, his attorney argued:

David has been going through some other personal matters in Illinois. He's just recently reduced his hours at work so that he could have more time. He started to begin some more face-to-face contact with [J.O.]. I believe that additional time is warranted as it relates to [David]. He's also paying child support and able to contribute in other ways.

On appeal, he renews that call. David emphasizes that he is paying support, has positive interactions with J.O., and can effectively communicate with the grandmother to set up more visits with his son. He also points to his stable housing and employment. He argues "it is reasonable to believe that given additional time, [he] could be in a position to parent [J.O.] on a full-time basis."

We agree with David that the circumstances warrant a six-month extension. He has changed his behavior in ways that signal his ability to be a full-time parent to J.O. For example, David secured steady employment and stable housing. He is paying child support and steadily resolving his arears. He also demonstrated his commitment and forethought by bringing J.O. a birthday gift and sending a package of gifts for Christmas. Most important, David has displayed positive parenting skills and an ability to fully engage with J.O. during their visits. J.O. values the time they spend together. And David has developed an amicable relationship with the maternal grandmother and has arranged in-person and video visits with his son through her. Admittedly, the visits have been few. But the record shows David faced the difficulty of traveling the distance between East Moline and Mason City—made even more onerous by the health concerns of the pandemic and his totaled car.

Other than the limited visits, the professionals in the case did not identify any particular parenting deficiencies on David's part. The caseworker described

David as "open and honest" about his life challenges but acknowledged he was loving and interacted well with J.O. The worker also noted that about six weeks before the termination trial, David "ended the relationship with his previous paramour, which had been kind of a deterrent to his ability to interact and do things with [J.O.]."

On the other side of the fulcrum, the termination order cited two concerns about David. First, the juvenile court mentioned David's admission to "occasional alcohol and marijuana use." But nothing in the record suggests that substance abuse was an ongoing concern. Second, the court referenced custody litigation between David and the mother of his younger son, including her application for a restraining order. David testified at the termination trial that he had not yet had a hearing on that application but was working with a lawyer to expand his visitation with his younger son. David also testified that he usually tries to call J.O. before he goes to see J.O.'s brother. David's testimony debunked the caseworker's impression that he purposely placed J.O. on the "back burner" as he developed a relationship with his younger son.

Given David's emerging potential to be a safe and stable parent for J.O., we find he deserves a more coordinated plan to reunite with his son. Most of the DHS efforts here focused on Nichole and her substance-abuse struggles. Services for David were an afterthought. During the next six months, while J.O. is still adjudicated as a CINA, the DHS should work with David and the maternal grandmother to develop a visitation plan that serves J.O.'s best interests. David should also obtain a substance-abuse evaluation to allay the DHS concerns about his drug and alcohol use. Likewise, David should undergo a mental-health

evaluation to assess whether he needs any follow-up services to be a safe parent. During this extension, David must prove his professed commitment to being an independent caretaker for the child.

Because we grant the extension of permanency to David, we do not address his argument that termination is not in J.O.'s best interests. That is not to say we are overlooking J.O.'s best interests. We understand a delay in permanency may affect J.O.'s sense of security. But we believe any negative impact is lessened by the familiar placement with his grandmother. "While time is of the essence in achieving permanency for children, we cannot lose sight of the competing principle that termination is an outcome of last resort." *See In re M.M.*, No. 19-1293, 2019 WL 5791290, at *3 (Iowa Ct. App. Nov. 6, 2019) (altered for readability) (citation omitted). David deserves a chance to keep building his parenting skills and his relationship with J.O. before the case reaches that last resort.

### III.    Summary

We affirm the juvenile court's order terminating Nichole's parental rights. But we find the juvenile court should have granted David a six-month extension rather than terminate his parental rights. We reverse the termination order as to the father and remand for further proceedings.

**MOTHER'S APPEAL AFFIRMED; FATHER'S APPEAL REVERSED AND REMANDED.**